# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| BLACK VOTERS MATTER FUND, TRANSFORMATIVE JUSTICE COALITION, THE RAINBOW PUSH COALITION, <br><br> *Plaintiffs*, <br><br> v. <br><br> BRAD RAFFENSPERGER, Secretary of State of Georgia, in his official capacity, <br><br> *Defendants*, <br><br> REPUBLICAN NATIONAL COMMITTEE and GEORGIA REPUBLICAN PARTY, <br><br> *Proposed Intervenor-Defendants*. | No. 1:20-cv-4869-SCJ |

**PROPOSED INTERVENOR-DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR <u>EMERGENCY</u> MOTION TO INTERVENE**

The Court should allow Movants, the Republican National Committee and Georgia Republican Party, to intervene as defendants in this case. As the Democratic Party recently observed, "political parties usually have good cause to intervene in disputes over election rules." *Issa v. Newsom*, Doc. 23 at 2, No. 2:20-cv-01044-MCE-CKD (E.D. Cal. June 8, 2020). That is why, in the recent spate of litigation over the 2020 election, the Democratic and Republican parties have been almost always been granted intervention.[1] This Court should do the same here for two independent reasons.

---

[1] *See, e.g.*, *Alliance for Retired American's v. Dunlap*, No. CV-20-95 (Me. Super. Ct. Aug. 21, 2020) (granting intervention to Donald J. Trump for President, Inc.; Republican National Committee; National Republican Senatorial Committee; and Republican Party of Maine); *Arizona Democratic Party v. Hobbs*, Doc. 60, No. 2:20-cv-01143-DLR (D. Ariz. June 26, 2020) (granting intervention to the RNC, Arizona Republican Party, and Trump for President); *Swenson v. Bostelmann*, Doc. 38, No. 20-cv-459-wmc (W.D. Wis. June 23, 2020) (granting intervention to the RNC and Republican Party of Wisconsin); *Edwards v. Vos*, Doc. 27, No. 20-cv-340-wmc (W.D. Wis. June 23, 2020) (same); *League of Women Voters of Minn. Ed. Fund v. Simon*, Doc. 52, No. 20-cv-1205 ECT/TNL (D. Minn. June 23, 2020) (granting intervention to the RNC, Republican Party of Minnesota, and Trump for President); *Issa v. Newsom*, 2020 WL 3074351, at *4 (E.D. Cal. June 10, 2020) (granting intervention to the DCCC and Democratic Party of California); *Nielsen v. DeSantis*, Doc. 101, No. 4:20-cv-236-RH (N.D. Fla. May 28, 2020) (granting intervention to the RNC, NRCC, and Republican Party of Florida); *Priorities USA v. Nessel*, 2020 WL 2615504, at *5 (E.D. Mich. May 22, 2020) (granting intervention to the RNC and Republican Party of Michigan); *Thomas v. Andino*, 2020 WL 2306615, at *4 (D.S.C. May 8, 2020) (granting intervention to the South Carolina Republican Party); *Corona v. Cegavske*, Order Granting Mot. to Intervene, No. CV 20-OC-644-1B (Nev. 1st Jud. Dist. Ct. Apr. 30, 2020) (granting intervention to the RNC and Nevada Republican Party); *League of*

1

***First***, Movants satisfy the criteria for intervention as of right under Rule 24(a)(2). Their motion is timely; Plaintiffs' complaint was filed three days ago, this litigation is still in its infancy, and no party will be prejudiced by intervention at this early stage. Movants also have a clear interest in protecting their candidates, voters, and resources from the parties' last-minute attempt to fundamentally alter Georgia's election rules. Finally, no other party adequately represents Movants' interests. The existing Defendant does not share Movants' distinct interests in conserving their resources and helping Republican candidates and voters.

***Second***, and alternatively, the Court should grant Movants permissive intervention under Rule 24(b). Again, this motion is timely. Movants' defenses share common questions of law and fact with the existing parties, and intervention will result in no delay or prejudice. The Court's resolution of the important questions here will have significant implications for Movants as they work to ensure that candidates and voters have the opportunity to participate in a fair and orderly runoff election this January.

Whether under Rule 24(a)(2) or (b), Movants should be allowed to

---

*Women Voters of Va. v. Va. State Bd. of Elections*, Doc. 57, No. 6:20-cv-24-NKM (W.D. Va. Apr. 29, 2020) (granting intervention to the Republican Party of Virginia); *Paher v. Cegavske*, 2020 WL 2042365, at *2 (D. Nev. Apr. 28, 2020) (granting intervention to four Democratic Party entities); *Democratic Nat'l Comm. v. Bostelmann*, 2020 WL 1505640, at *5 (W.D. Wis. Mar. 28, 2020) (granting intervention to the RNC and Republican Party of Wisconsin); *Gear v. Knudson*, Doc. 58, No. 3:20-cv-278 (W.D. Wis. Mar. 31, 2020) (same); *Lewis v. Knudson*, Doc. 63, No. 3:20-cv-284 (W.D. Wis. Mar. 31, 2020) (same).

intervene as defendants. Defendant consents to this motion. Plaintiffs object. Without consent from all parties, Movants propose the following expedited briefing schedule so that this motion is fully briefed before the hearing on December 10: Plaintiffs' response (if any) should be due on Tuesday, December 8, and Movants' reply (if any) should be due on Wednesday, December 9.

## INTERESTS OF PROPOSED INTERVENORS

Movants are political committees who support Republicans in Georgia. The Republican National Committee is a national committee as defined by 52 U.S.C. §30101. It manages the Republican Party's business at the national level, supports Republican candidates for public office at all levels, coordinates fundraising and election strategy, and develops and promotes the national Republican platform. The Georgia Republican Party is a recognized political party that works to promote Republican values and to assist Republican candidates in obtaining election to partisan federal, state, and local office. Both Movants have interests—their own and those of their members—in the rules and procedures governing Georgia elections.

## ARGUMENT

**I.    Movants are entitled to intervene as of right.**

Rule 24 is "liberally construed with all doubts resolved in favor of the proposed intervenor." *South Dakota ex rel. Barnett v. U.S. Dep't of Interior*, 317 F.3d 783, 785 (8th Cir. 2003). Under Rule 24(a)(2), this Court must grant intervention as of right if: (1) the motion is timely; (2) movants have a legally protected interest in this action; (3) this action may impair or impede that

3

interest; and (4) no existing party adequately represents Movants' interests. *See Chiles v. Thornburgh*, 865 F.2d 1197, 1213 (11th Cir. 1989). Movants satisfy each of these requirements.

### A. The motion is timely.

The Court considers four factors in determining the timeliness of a motion to intervene: (1) the length of time during which the proposed intervenor knew or reasonably should have known of its interest in the case before moving to intervene; (2) the extent of prejudice to the existing parties as a result of the proposed intervenor's failure to move for intervention as soon as it knew or reasonably should have known of its interest; (3) the extent of prejudice to the proposed intervenor if its motion is denied; and (4) the existence of unusual circumstances militating either for or against a determination that its motion was timely. *Id.* These factors all favor Movants.

Movants filed this motion early—three days after the complaint, two days after the preliminary-injunction motion, and less than one day after they heard about this suit in the press. Courts frequently recognize as timely much later intervention motions. *See e.g.*, *North Dakota v. Heydinger*, 288 F.R.D. 423, 429 (D. Minn. 2012) (motion filed over one year after the answer was timely); *Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1397 (9th Cir. 1995) (motion filed four months after the complaint was timely); *Uesugi Farms, Inc. v. Michael J. Navilio & Son, Inc.*, 2015 WL 3962007, at *2 (N.D. Ill. June 25, 2015) (motions filed 4-6 weeks after the complaint are timely). It is difficult to think that Movants could possibly have acted faster than they did.

4

Nor will Movants' intervention prejudice the parties. This litigation has barely begun. Though Plaintiffs have requested expedited litigation given the impending January election, Movants assure the Court that they will comply with all deadlines and work to prevent any duplicative briefing and coordinate any discovery or other proceedings. If Movants are not allowed to intervene, however, their interests in this case will be irreparably harmed by a preliminary injunction that would override Georgia's election decisions and undermine the integrity of the January runoff. Their motion is thus timely.

### B.  Movants have protected interests in this action.

Movants also have "'direct, substantial, legally protectible interest[s] in the proceeding'" because they are Republican Party organizations that represent candidates and voters in the impending election. *Chiles*, 865 F.2d at 1213-14. Movants have direct and significant interests in ensuring that the State's voter rolls are accurate and that the State's election procedures are fair and reliable, as the State's decisions and laws are designed to serve "the integrity of [the] election process," *Eu v. San Fran. Cty. Democratic Cent. Comm.*, 489 U.S. 214, 231 (1989), and the "orderly administration" of elections, *Crawford v. Marion Cty. Election Bd.*, 553 U.S. 181, 196 (2008) (op. of Stevens, J.).

Federal courts "routinely" find that political parties have interests supporting intervention in litigation regarding elections and election procedures. *Issa*, 2020 WL 3074351, at *3; *see, e.g.*, *Siegel v. LePore*, 234 F.3d 1163, 1169 n.1 (11th Cir. 2001); *supra* n.1. Indeed, given their inherent and

broad-based interest in elections, usually "[n]o one disputes" that a political party "meet[s] the impaired interest requirement for intervention as of right." *Citizens United v. Gessler*, 2014 WL 4549001, *2 (D. Col. Sept. 15, 2014). That is certainly true where, as here, "changes in voting procedures could affect candidates running as Republicans and voters who [are] members of the … Republican Party." *Ohio Democratic Party v. Blackwell*, 2005 WL 8162665, *2 (S.D. Ohio Aug. 26, 2005); *see id.* (under such circumstances, "there [was] no dispute that the Ohio Republican Party had an interest in the subject matter of this case").

In short, because Movants' candidates "actively seek [election or] reelection in contests governed by the challenged rules [and decisions]," Movants have an interest in "demand[ing] adherence" to those procedures. *Shays v. FEC*, 414 F.3d 76, 88 (D.C. Cir. 2005).

### C. This action threatens to impair Movants' interests.

Movants are "so situated that disposing of [this] action may as a practical matter impair or impede [their] ability to protect [their] interest." Fed. R. Civ. P. 24(a)(2). Movants "do not need to establish that their interests *will* be impaired," "only that the disposition of the action 'may' impair or impede their ability to protect their interests." *Brumfield v. Dodd*, 749 F.3d 339, 344 (5th Cir. 2014). This language in Rule 24 is "obviously designed to liberalize the right to intervene in federal actions." *Nuesse v. Camp*, 385 F.2d 694, 701 (D.C. Cir. 1967).

6

Here, Movants' interests will plainly "suffer if the Government were to lose this case, or to settle it against [Movants'] interests." *Mausolf v. Babbitt*, 85 F.3d 1295, 1302-03 (8th Cir. 1996). Not only would it undercut democratically enacted laws and longstanding practices that protect voters and candidates (including Movants' members), it would change the "structur[e] of th[e] competitive environment" and "fundamentally alter the environment in which [Movants] defend their concrete interests (e.g. their interest in … winning [election or] reelection)." *Shays*, 414 F.3d at 85-86. These late changes also threaten to confuse voters and undermine confidence in the electoral process. *See Purcell v. Gonzalez*, 549 U.S. 1, 4-5 (2006) ("Court orders affecting elections … can themselves result in voter confusion and consequent incentive to remain away from the polls. As an election draws closer, that risk will increase."). In addition to that independent harm, Movants will be forced to spend substantial resources fighting inevitable confusion and galvanizing participation in the wake of the "consequent incentive to remain away from the polls." *Id.*; *accord Pavek v. Simon*, 2020 WL 3183249, at *10 (D. Minn. June 15, 2020).

"[A]s a practical matter," Fed. R. Civ. P. 24(a)(2), moreover, "[s]uccess by [Plaintiffs] in the whole litigation would impair the proposed intervenors' interests" and could prevent Movants from defending their rights at all. *South Dakota v. Ubbelohde*, 330 F.3d 1014, 1025 (8th Cir. 2003). Even setting aside the long-term effects on the integrity of elections and public confidence in the electoral process, this proceeding might be the *only* time that Movants can

litigate this last-minute alteration of Georgia's voter rolls, given the obvious timing concerns. In other words, Movants' ability to litigate these issues "in a separate lawsuit might be an exercise in futility if the instant lawsuit was decided in favor of [Plaintiffs]." *Chiles*, 865 F.2d at 1214. Because the "very purpose of intervention is to allow interested parties to air their views so that a court may consider them *before* making potentially adverse decisions," *Brumfield*, 749 F.3d at 345 (emphasis added), the "best" course—and the one that Rule 24 "implements"—is to give "all parties with a real stake in a controversy … an opportunity to be heard" in this suit, *Hodgson v. United Mine Workers of Am.*, 473 F.2d 118, 130 (D.C. Cir. 1972).

### D. The parties do not adequately represent Movants' interests.

Finally, Movants are not adequately represented by the existing parties. Inadequacy is not a demanding showing. This requirement is satisfied "if the proposed intervenor shows that representation of his interest *may be* inadequate." *Chiles*, 865 F.2d at 1214 (cleaned up; emphasis added). In other words, "'the burden of making that showing should be treated as minimal,'" and the proposed intervenors "'should be allowed to intervene unless it is clear that [the current parties] will provide adequate representation.'" *Id.*

As Judge Garland has explained, courts "often conclude[] that governmental entities do not adequately represent the interests of aspiring intervenors." *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 736 (D.C. Cir. 2003). "[T]he government's representation of the public interest generally

cannot be assumed to be identical to the individual parochial interest of a [private movant] merely because both entities occupy the same posture in the litigation." *Utah Ass'n of Counties v. Clinton*, 255 F.3d 1246, 1255-56 (10th Cir. 2001). Here, too, Defendant necessarily represents "the public interest," rather than Movants' "particular interest[s]" in protecting their resources and the rights of their candidates and voters. *Coal. of Ariz./N.M. Counties for Stable Economic Growth v. DOI*, 100 F.3d 837, 845 (10th Cir. 1996). While all political parties want what's best for the public, the reality is that they have very different ideas of what that looks like and how best to accomplish it.

This tension is stark in the context of elections. Defendant has no interest in the election of particular candidates or the mobilization of particular voters, or the costs associated with either. Instead, state officials, acting on behalf of all Georgia citizens and the state itself, must consider "a range of interests likely to diverge from those of the intervenors." *Meek v. Metro. Dade Cty.*, 985 F.2d 1471, 1478 (11th Cir. 1993). Those interests include "the expense of defending the current [laws] out of [state] coffers," *Clark v. Putnam Cty.*, 168 F.3d 458, 461 (11th Cir. 1999), "the social and political divisiveness of the election issue," *Meek*, 985 F.2d at 1478, "their own desires to remain politically popular and effective leaders," *id.*, and even the interests of opposing parties, *In re Sierra Club*, 945 F.2d 776, 779-80 (4th Cir. 1991). Defendant apparently agrees, as it consents to Movants' intervention in this case. *Cf. Utah Ass'n of Counties v. Clinton*, 255 F.3d 1246, 1255 (10th Cir. 2001) ("The government has taken no position on the motion to intervene in this case.

Its 'silence on any intent to defend the intervenors' special interests is deafening.'").

At the very least, Movants will "serve as a vigorous and helpful supplement" to Defendant and "can reasonably be expected to contribute to the informed resolutions of these questions." *NRDC v. Costle*, 561 F.2d 904, 912-13 (D.C. Cir. 1977). Movants affirmatively seek to preserve Georgia's existing voting safeguards, such as the accuracy of the voter rolls challenged here, and to prevent last-minute changes to Georgia's election law. Movants should thus be granted intervention as of right.

## II. Alternatively, Movants are entitled to permissive intervention.

Even if Movants were not entitled to intervene as of right under Rule 24(a), this Court should grant them permissive intervention under Rule 24(b). Exercising broad judicial discretion, courts grant permissive intervention when the movant has "a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b); *see Chiles*, 865 F.2d at 1213. The court also must consider "whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3); *see Chiles*, 865 F.2d at 1213.

The requirements of Rule 24(b) are met here. As explained, Movants filed a timely motion. *Supra* I.A. And Movants will raise defenses that share many common questions with the parties' claims and defenses. Plaintiffs allege that the challenged laws are unconstitutional and challenged procedures are unlawful. Movants, on the other hand, directly reject those allegations and

10

assert that Plaintiffs' desired relief would undermine the interests of Movants and their members. This is why numerous courts have permitted political parties to intervene in defense of state election laws and practices. *See, e.g.*, *Swenson v. Bostelmann*, Doc. 38, No. 20-cv-459-wmc (W.D. Wis. June 23, 2020) ("[T]he [RNC and Republican Party of Wisconsin] have a defense that shares common questions of law and fact with the main action; namely, they seek to defend the challenged election laws to protect their and their members' stated interests—among other things, interest in the integrity of Wisconsin's elections."); *Priorities USA v. Nessel*, 2020 WL 2615504, at *5 (E.D. Mich. May 22, 2020) (recognizing that the permissive-intervention factors were met when the RNC "demonstrate[d] that they seek to defend the constitutionality of Michigan's [election] laws, the same laws which the plaintiffs allege are unconstitutional").

Movants' intervention will not unduly delay this litigation or prejudice anyone. Movants swiftly moved to intervene while the case is in its earliest stages, and their participation will add no delay beyond the norm for multiparty litigation. After all, Plaintiffs put the legality of various laws and practices at issue and "can hardly be said to be prejudiced by having to prove a lawsuit [they] chose to initiate." *Security Ins. Co. of Hartford v. Schipporeit, Inc.*, 69 F.3d 1377, 1381 (7th Cir. 1995). Movants commit to submitting all filings in accordance with whatever briefing schedule the Court imposes, "which is a promise" that undermines claims of undue delay. *Emerson Hall*

*Assocs., LP v. Travelers Casualty Ins. Co. of Am.*, 2016 WL 223794, *2 (W.D. Wis. Jan. 19, 2016). And Defendant consents to Movants' participation.

Allowing Movants to intervene will promote consistency and fairness in the law, as well as efficiency in this case. It will allow "the Court … to profit from a diversity of viewpoints as they illuminate the ultimate questions posed by the parties," *Franconia Minerals (US) LLC v. United States*, 319 F.R.D. 261, 268 (D. Minn. 2017), thus preventing protracted piecemeal litigation and the possibility of conflicting legal decisions. Allowing intervention by political parties in a "time-sensitiv[e]" "election-related dispute" also preempts the delay that otherwise results from sorting out Movants' rights on appeal. *See Jacobson v. Detzner*, 2018 WL 10509488 (N.D. Fla. July 1, 2018) ("[D]enying [Republican Party organizations'] motion [to intervene] opens the door to delaying the adjudication of this case's merits for months—if not longer"); *Stringfellow v. Concerned Neighbors in Action*, 480 U.S. 370, 377 (1987) ("[W]hen an order prevents a putative intervenor from becoming a party in *any* respect, the order is subject to immediate review."); *McLean v. Arkansas*, 663 F.2d 47, 48 (8th Cir. 1981) (similar). Where a court has doubts, "the most prudent and efficient course of action" is to allow permissive intervention. *Lac Courte Oreilles Band of Lake Superior Chippewa Indians of Wis. v. United States*, 2002 WL 32350046, *3 (W.D. Wis. Nov. 20, 2002).

## CONCLUSION

The Court should grant Movants' motion and allow them to intervene as defendants.

<table>
<tr><td></td><td>Respectfully submitted,</td></tr>
<tr><td>Dated: December 5, 2020</td><td>/s/ <u>Douglas Chalmers, Jr.</u></td></tr>
<tr><td>Tyler R. Green (<i>pro hac vice</i> forthcoming)<br>Cameron T. Norris (<i>pro hac vice</i> forthcoming)<br>CONSOVOY MCCARTHY PLLC<br>1600 Wilson Boulevard, Suite 700<br>Arlington, VA 22209<br>(703) 243-9423</td><td>Douglas Chalmers, Jr. (GA Bar #118742)<br>Mark W. Wortham (GA Bar #777065)<br>CHALMERS & ADAMS LLC<br>5805 State Bridge Rd. #G77<br>Johns Creek, GA 30097<br>Phone: (770) 630-5927; (404) 428-0956<br>Fax: (866) 716-6089<br><br>Zachary M. Wallen (<i>pro hac vice</i> forthcoming)<br>CHALMERS & ADAMS LLC<br>301 South Hills Village Drive,<br>Suite LL200-420,<br>Pittsburgh, PA 15241<br>(412) 200-0842</td></tr>
</table>

<i>Counsel for Proposed Intervenor-Defendants</i>

## CERTIFICATE OF COMPLIANCE

I certify that this motion uses 13-point Century Schoolbook in compliance with Local Rule 5.1(B).

/s/ <u>Douglas Chalmers, Jr.</u>
Douglas Chalmers, Jr. (GA Bar #118742)

## CERTIFICATE OF SERVICE

I certify that this motion was filed with the Clerk via CM/ECF on December 5, 2020, thereby serving all counsel of record.

/s/ <u>Douglas Chalmers, Jr.</u>
Douglas Chalmers, Jr. (GA Bar #118742)