IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| BLACK VOTER'S MATTER FUND, *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>BRAD RAFFENSPERGER, in his official capacity as the Georgia Secretary of State and Chair of the Georgia State Election Board,<br><br>*Defendant*. | CIVIL ACTION FILE<br>NO. 1:20-cv-04869-SCJ |

## <u>BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT</u>

## <u>INTRODUCTION</u>

Plaintiffs claim that approximately 200,000 individuals were unlawfully removed during Georgia's regularly scheduled and statutorily mandated voter-list-maintenance process a year ago. Even if their claims had merit—and they do not—Plaintiffs have failed to properly invoke the jurisdiction of this Court. They failed to comply with the 90-day notice period required before bringing a claim under the National Voter Registration Act ("NVRA"), which is fatal to the first two counts of their Complaint, at least for the time being. And the entire case should be dismissed because they do not have an injury sufficient

1

to confer standing as organizations and delayed in bringing this action. Further, Plaintiffs have failed to state a claim because of their improper interpretation of the requirements of the NVRA. This Court should dismiss Plaintiffs' Complaint in its entirety and allow Georgia's runoff elections to proceed using existing statutory processes and without making changes on an emergency basis.

## ARGUMENT AND CITATION TO AUTHORITY

The Secretary moves to dismiss this case under Fed. R. Civ. P. 12(b)(1) and 12(b)(6). These two distinct vehicles for dismissal permit the Court to engage in different standards of review when determining whether to grant the motion. While a motion under Fed. R. Civ. P. 12(b)(6) is viewed deferentially to the plaintiffs' allegations, a complaint must be dismissed under Fed. R. Civ. P. 12(b)(1) if it has not alleged a sufficient basis for subject-matter jurisdiction. *Stalley v. Orlando Reg'l Healthcare Sys.*, 524 F.3d 1229, 1232 (11th Cir. 2008). As one court has noted, in a challenge to jurisdiction in a factual 12(b)(1) motion, Plaintiffs' allegations do not enjoy the same degree of deference afforded under 12(b)(6):

> Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction -- its very power to hear the case -- there is substantial authority that **the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case**. In short, **no presumptive truthfulness attaches to**

2

> **plaintiff's allegations**, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. Moreover, **the plaintiff will have the burden of proof that jurisdiction does in fact exist.**

*Eaton v. Dorchester Dev., Inc.*, 692 F.2d 727, 732 n.9 (11th Cir. 1982) (emphasis added). Moreover, "[t]here is also authority that, in a facial attack [under 12(b)(1)], a court is still free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Anderson v. Raffensperger*, No. 1:20-cv-03263, 2020 U.S. Dist. LEXIS 188677 (N.D. Ga. Oct. 13, 2020) at *14 n.4, citing *Flat Creek Transportation, LLC v. Fed. Motor Carrier Safety Admin.*, 923 F. 3d 1295, 1299 n.1 (11th Cir. 2019) (rejecting the argument that a facial attack precluded the court from weighing the evidence).

**I.      Plaintiffs lack standing.**

Article III of the Constitution limits the subject-matter jurisdiction of federal courts. U.S. CONST. art. III § 2. A party invoking federal jurisdiction bears the burden of establishing standing at the start of the lawsuit. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 570 n.5 (1992); *Johnson v. Bd. of Regents*, 263 F.3d 1234, 1267 (11th Cir. 2001). Standing requires proof of: "(1) an injury in fact that (2) is fairly traceable to the challenged action of the defendant and (3) is likely to be redressed by a favorable decision." *Jacobson v. Fla. Sec'y of State*, 974 F.3d 1236, 1245 (11th Cir. 2020) citing *Lujan,* 504 U.S.

at 560-561. This Court must address threshold issues of jurisdiction and standing before considering dismissal on the merits. *Georgia Shift v. Gwinnett Cty.*, No. 1:19-cv-01135-AT, 2020 U.S. Dist. LEXIS 31407, at *7 (N.D. Ga. Feb. 12, 2020).

    A.    *Plaintiffs have not adequately alleged organizational standing.*

There are no individual voters who are parties to this case. Instead, each of the Plaintiffs seeks to establish standing only based on a diversion-of-resources theory. But none of the Plaintiffs have alleged sufficient facts to conclude that they have suffered any injury for purposes of Article III.

To sufficiently divert resources for standing purposes, an organizational plaintiff must allege a "concrete and demonstrable injury to the organization's activities – with the consequent drain on the organization's resources – [that] constitutes far more than simply a setback to the organization's abstract social interests." *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379, 102 S. Ct. 1114, 1124 (1982). If a complaint contains only "generic and abstract" allegations of injury, the complaint must be dismissed for lack of standing. *In re Equifax, Inc.*, 371 F. Supp. 3d 1150, 1165-1166 (N.D. Ga. 2019).

"[A]n organization has standing to sue when a defendant's illegal acts impair the organization's ability to engage in its own projects by forcing the organization to divert resources in response." *Democratic Party of Ga., Inc. v.*

4

*Crittenden*, 347 F. Supp. 3d 1324, 1336 (N.D. Ga. 2018) citing *Arcia v. Sec'y of Fla.*, 772 F.3d 1335, 1341 (11th Cir. 2014). Plaintiffs cannot get away with merely reciting resource "diversion" as a legal conclusion. *Jacobson*, 974 F.3d at 1250. Instead, they must allege and incorporate *facts* identifying where the diversion occurred to a sufficient degree to satisfy the Court of its jurisdiction over the Plaintiffs' complaint. *Id*.

### 1. Plaintiffs are pursuing their organizational purposes.

Rather than meeting this burden, the three organizational Plaintiffs effectively allege they will keep pursuing their respective general missions. Doc. No. [1] at ¶¶ 1–3. Black Voter's Matter Fund (BVMF) counts among its "core programs" its ongoing efforts to "increase[] voter registration and turnout [and] advocating for policies to expand voting rights and access." Doc. No. [1] at ¶ 1. In effect, then, the claims alleged here are a continuation of that core mission to "increase voter registration." *Id*. While BVMF claims that it spent more than $40,000 to send postcards to individuals about re-registering, it does not explain how that mailing differs in any way from its programs to "increas[e] voter registration and turnout." *Id*.

The Transformative Justice Coalition ("TJC") fares no better. TJC characterizes its mission as "an organization which seeks to be a catalyst for transformative institutional changes to bring about justice and equality in the

United States and abroad," by educating people about "how to protect their voting rights and steps to take to ensure their ability to cast a ballot and have it counted." Doc. No. [1] at ¶ 2. It is hard to see how this differs from what they seek in this lawsuit, namely, informing voters that they may have been removed from the voter-registration list as a result of their inactivity and lack of contact with the State.

The Rainbow PUSH Coalition ("RPC") is similarly situated to its fellow plaintiffs. RPC considers it its mission "to educate voters and promote full participation in the electoral process the organization also seeks to empower citizenry through the effective use of public policy advocacy." Doc. No. [1] at ¶ 3. Much like TJC, the claims at issue in this case run with, not counter to, RPC's organizational mission and core purpose.

Each of the Plaintiffs make only conclusory or unsupported and abstract allegations about minor changes *from* one aspect of fulfilling their organizational purpose *to* another. But this does not constitute a concrete and demonstrable injury under Article III. As the Seventh Circuit recently explained, organizations cannot support a claim of standing "based solely on the baseline work they are already doing. They cannot convert ordinary program costs into an injury in fact. The question is what additional or new burdens are created by the law the organization is challenging. It must show

6

that the disruption is real and its response is warranted." *Common Cause Ind. v. Lawson*, 937 F.3d 944, 955 (7th Cir. 2019) (internal quotations and citations omitted). Organizations must show that the challenged law's effect "goes far beyond 'business as usual'" through "concrete evidence showing that [the law] is already disrupting their operations and . . . will likely require them to significantly change or expand their activities." *Id.*

        2.    <u>Plaintiffs offer nothing beyond allegations in an unverified Complaint to support standing for emergency relief.</u>

Despite seeking emergency relief in both the Complaint and their motion for preliminary injunction, Plaintiffs offer absolutely no evidence in support of their purported injuries. The Complaint is unverified and contains no declarations or sworn affidavits supporting their claim of resource diversion.[1] Without this evidence, Plaintiffs cannot establish any entitlement to emergency relief because they have not pleaded associational standing or offered any of their members as a proxy for their own injury as an organization.

---

[1] The motion for preliminary injunction is supported by only two declarations, one from an individual who ran a change-of-address analysis and the other from Mr. Palast. Doc. Nos. [7] and [8]. While Mr. Lenser references the mailing paid for by Black Voter's Matter Fund, Doc. No. [7] at ¶¶ 62-64, Mr. Lenser does not explain how that relates to the organization's mission or what other programs for which it might have utilized those funds.

## II. Plaintiffs have failed to satisfy the pre-suit notice requirement of the National Voter Registration Act before bringing their Complaint.

In addition to lacking Article III standing to bring their Complaint, Plaintiffs have another problem—the entirety of Counts I and II of their Complaint are based solely on the NVRA. But Plaintiffs did not properly invoke the private right of action under the NVRA by providing the required pre-suit notice.

### A. *Plaintiffs did not provide notice 90 days before this case was filed.*

Under the NVRA, a person[2] may pursue a private right of action to ensure the requirements of the Act are followed. But that action is subject to a specific process. First, a person purportedly aggrieved must "provide written notice of the violation to the chief election official of the State involved." 52 U.S.C. § 20510(b)(1). The statute continues, "[i]f the violation is not corrected within 90 days ***after receipt*** of notice… the aggrieved person may bring a civil action in an appropriate district court for declaratory or injunctive relief with respect to the violation." 52 U.S.C. § 20510(b)(2) (emphasis added). Put

---

[2] While "person" is not defined by the NVRA, it has been construed to include organizations and not just individuals. *Common Cause of Colo. v. Buescher*, 750 F. Supp. 2d 1259, 1268 (D. Colo. 2010); *see also Charles H. Wesley Educ. Found., Inc. v. Cox*, 408 F.3d 1349, 1354 (11th Cir. 2005) (finding organization could have standing in NVRA challenge without considering definition of "person").

8

differently, any plaintiff pursuing a private claim under the NVRA must wait at least 90 days after the Secretary of State actually received written notice. Plaintiffs here did not satisfy this requirement.

Plaintiffs allege that the first letter anyone sent to the Secretary about the topics in their Complaint was sent on September 22, 2020—71 days before the lawsuit was filed. Doc. No. [1] at ¶ 58. Recognizing this shortfall in the timing of their case, Plaintiffs rely on a September 1, 2020 report "publicly issued" by the ACLU of Georgia containing the results of an analysis of voter-registration rolls as their notice. Doc. No. [1] at ¶ 50. A non-party posting a report on its website is not sufficient notice because it is not "written notice . . . to the chief election official." 52 U.S.C. § 20510(b)(1). The mere fact that the Secretary's office was asked by the press about the report, Doc. No. [1] at ¶ 52, does not establish compliance with the NVRA's notice requirements. Counts I and II of Plaintiffs' Complaint should be dismissed until the 90-day period has elapsed.

B.   *Plaintiffs never provided notice.*

Plaintiffs' NVRA claims suffer from another flaw as well—while *someone* put the Secretary on notice on September 22 by letter, it was not any "aggrieved person" who is before the Court in this case. Plaintiffs allege only that the September 22 letter was sent by the "undersigned counsel." Doc. No.

9

[1] at ¶ 58. But the letter, which is attached to Mr. Palast's declaration, indicates that it was sent on behalf of Mr. Palast, not on behalf of any of the Plaintiffs in this case. Doc. No. [8-1], pp. 2-3. The second letter, on October 19, 2020, was likewise only written "on behalf of Mr. Palast" and not on behalf of any Plaintiff. Doc. No. [1] at ¶ 64; Doc. No. [8-2], p. 2.

Bringing an action under the NVRA requires several steps: (1) the "aggrieved person" sends notice to the chief election official; (2) 90 days elapses without the violation being corrected; and (3) the aggrieved person who provided the notice "may bring a civil action." 52 U.S.C. § 20510(b)(1) and (2). While Mr. Palast's counsel sent a letter only on behalf of him and possibly the ACLU, neither of those entities are Plaintiffs in this case. Because Plaintiffs have not provided sufficient notice under the NVRA, Counts I and II must be dismissed on this ground as well. *See Ga. State Conf. of the NAACP v. Kemp*, 841 F. Supp. 2d 1320, 1335 (N.D. Ga. January 30, 2012) (dismissing individual plaintiff in NVRA case when notice of that plaintiffs' situation had not been provided).

### III. Plaintiffs have failed to state a claim upon which relief can be granted because the NVRA does not require use of a licensee.

The Secretary incorporates the arguments in his response in opposition to the motion for preliminary injunction on the lack of any requirement in the

NVRA that a Postal Service licensee be used for NCOA matching. As explained in that brief, while the NVRA requires that the change-of-address *information* from a licensee of the Postal Service be used, there is no requirement that the vendor retained by a state be a licensee, so long as the information used is from a licensee.

## IV. Plaintiffs have inexcusably delayed in bringing their claims, so they are barred by laches.

Plaintiffs also delayed bringing their case, implicating the doctrine of laches. Laches prevents a court from considering a claim when three elements are present: "(1) [A] delay in asserting a right or a claim; (2) that the delay was not excusable; and (3) that there was undue prejudice to the party against whom the claim is asserted." *Venus Lines Agency Inc. v. CVG Int'l Am., Inc.*, 234 F. 3d 1225, 1230 (11th Cir. 2000).

Laches has particular force in the context of election challenges and election administration. Indeed, laches often bars equitable relief in actions brought by tardy plaintiffs prior to the relevant election. *See Navarro v. Neal*, 904 F. Supp. 2d 812, 816-817 (N.D. Ill. 2012) (collecting cases); *see also Stein v. Boockvar*, No. 16-6287, 2020 U.S. Dist. LEXIS 75476, at *58 (E.D. Pa. Apr. 29, 2020); *Wood v. Raffensperger*, Civil Action No. 1:20-cv-04651-SDG, 2020 U.S. Dist. LEXIS 218058, at *20 (N.D. Ga. Nov. 20, 2020). Laches is not merely

an academic construct. Particularly in election cases, it operates as an important bulwark against plaintiffs who would strategically use litigation to disrupt an election.

Plaintiffs who sleep on their rights only to bring last-minute challenges create "a situation in which any remedial order would throw the state's preparations for the election into turmoil." *Nader v. Keith,* 385 F.3d 729, 736 (7th Cir. 2004). By strictly applying laches in the election setting, courts properly encourage parties to litigate their claims at the earliest possible time, resulting in the least disruption to the election and, ultimately, the voters. *See*, Richard L. Hasen, *Beyond the Margin of Litigation: Reforming U.S. Election Administration to Avoid Electoral Meltdown*, 62 WASH. & LEE L. REV. 937, 998 (2005) ("Courts should see it as in the public interest in election law cases to aggressively apply laches so as to prevent litigants from securing options over election administration problems."). *See also*, Samuel L. Bray, S*ystem of Equitable Remedies*, 63 UCLA L. REV. 530, 585 (2016) (explaining that laches "serves as a reminder to judges that an equitable remedy can have different effects at different points in time, and that this temporal variation invites opportunistic behavior by litigants").

### A. *Plaintiffs delayed in asserting their claims.*

Plaintiffs admit they have known of the factual basis for this lawsuit for more than a year, Doc. No. [7] at ¶ 45, and yet delayed filing it (and their motion for preliminary injunction) until after absentee ballots had been mailed and slightly more than two weeks before early voting begins in the election they seek to impact. They have offered no explanation for this delay. Now, on unreasonably short notice, Plaintiffs ask this Court to proceed on an emergency basis and to disrupt the Secretary's already-compressed timeframe to carry out the January 5, 2021 runoff elections. While Plaintiffs ask this Court for emergency relief, the emergency is entirely one of their own making. The Court should not reward Plaintiffs' strategic dilatory tactics.

### B. *Plaintiffs' delay was not excusable.*

Delay is measured "from the time at which the plaintiff knows or should know she has a provable claim." *Kason Indus., Inc. v. Component Hardware Grp., Inc.,* 120 F. 3d 1199, 1203 (11th Cir. 1997). As earlier noted, Plaintiffs in this case freely admit that they knew or should have known their claim was ripe for adjudication more than a year ago. Doc. No. [7] at ¶ 45. For Plaintiffs to bring this case now, knowing that the Secretary is attempting to carry out an election on an already-compressed timeframe, exposes a complete lack of excuse for delay.

13

### C.  *The Secretary was prejudiced by Plaintiffs' delay.*

If Plaintiffs are successful, the State of Georgia will be required to add nearly 200,000 voters to the rolls in less than a week. Meanwhile, the State must carry out its other duties administering and supervising elections in the same timeframe. This would impose significant logistical and financial burdens on the State for no reason other than Plaintiffs' inexcusable delay. Indeed, such "a last-minute intervention by a federal court could 'result in voter confusion and consequent incentive to remain away from the polls.'" *Wood*, 2020 U.S. Dist. LEXIS 218058, at *22-23. As the State continues to try to resolve challenges to the general election conducted last month, the Secretary and his staff must also carry out tasks related to the upcoming elections. To this already significant workload, Plaintiffs would add their requested relief. But this is exactly the kind of eleventh-hour order against which courts caution and practicality counsels.

## CONCLUSION

While claiming widespread problems with Georgia's voter-registration list, Plaintiffs have not properly invoked the jurisdiction of this Court. They do not have standing. They did not provide proper notice to travel under the NVRA. They have not stated a valid claim. And they waited too long to bring these issues to the Court's attention. This Court should dismiss this case and

14

allow Georgia's election processes to move forward using Georgia's existing structure.

Respectfully submitted this 8th day of December, 2020.

        **STATE LAW DEPARTMENT**

        Christopher M. Carr
        Attorney General
        GA Bar No. 112505
        Bryan K. Webb
        Deputy Attorney General
        Georgia Bar No. 743580
        Russell D. Willard
        Senior Assistant Attorney General
        Georgia Bar No. 760280
        Charlene S. McGowan
        Assistant Attorney General
        Georgia Bar No. 697316
        40 Capitol Square, S.W.
        Atlanta, Georgia 30334

        **TAYLOR ENGLISH DUMA LLP**

        */s/ Bryan P. Tyson*
        Bryan P. Tyson
        Special Assistant Attorney General
        Georgia Bar No. 515411
        btyson@taylorenglish.com
        Bryan F. Jacoutot
        Georgia Bar No. 668272
        bjacoutot@taylorenglish.com
        Loree Anne Paradise
        Georgia Bar No. 382202
        lparadise@taylorenglish.com

1600 Parkwood Circle, Suite 200
Atlanta, GA 30339
770.434.6868 (telephone)

*Counsel for Defendant Secretary of State*

## **CERTIFICATE OF COMPLIANCE**

Pursuant to L.R. 7.1(D), the undersigned hereby certifies that the foregoing BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT has been prepared in Century Schoolbook 13, a font and type selection approved by the Court in L.R. 5.1(B).

*/s/ Bryan P. Tyson*
Bryan P. Tyson